UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIM. CASE NO. |
| | : | 3:18-CR-0220 (JCH) |
| v. | : | |
| | : | |
| VASHUN LEWIS, | : | AUGUST 25, 2020 |
| Defendant. | : | |
| | : | |

**RULING ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR A NEW TRIAL (DOC. NO. 146)**

**I.   INTRODUCTION**

On March 5, 2020, after a three-day bifurcated trial, defendant Vashun Lewis ("Lewis") was convicted of both counts of the Superseding Indictment.  See Jury Verdict ("924(c) Verdict") (Doc. No. 133); Jury Verdict ("Felon-in-Possession Verdict") (Doc. No. 135).  On Count One, the jury convicted Lewis of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of section 924(c)(1)(A)(i) of title 18 of the U.S Code.  See 924(c) Verdict.  On Count Two, the jury convicted Lewis of Unlawful Possession of a Firearm by a Felon in violation of sections 922(g)(1) and 924(a)(2) of title 18 of the U.S. Code.  See Felon-in-Possession Verdict.

On March 17, 2020, Lewis timely filed a Motion for Judgment of Acquittal or a New Trial ("Def.'s Mot.") (Doc. No. 146) pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure.  For the reasons stated below, Lewis's Motion is denied as to all grounds on which he seeks relief.

1

## II. BACKGROUND

The Superseding Indictment in this case charged Lewis with two firearm possession offenses in connection with the same firearm. See Superseding Indictment (Doc. No. 42). Count One charged Lewis with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of section 924(c)(1)(A)(i) of title 18 of the U.S Code. Id. Count Two charged Lewis with Unlawful Possession of a Firearm by a Felon in violation of sections 922(g)(1) and 924(a)(2) of title 18 of the U.S. Code. Id.

On the parties' joint motion, the court bifurcated the trial into two phases, with one phase each for Count One and Count Two. See Tr. ("3/3 Tr.") (Doc. No. 152) at 21:2-14. The court included a special interrogatory on the Verdict Form for Count One, asking the jury to indicate--only if the jury found Lewis not guilty on Count One--whether Lewis knowingly possessed the firearm in question. See 924(c) Verdict.

During the phase relating to Count One, the government presented witnesses and exhibits concerning the search of Lewis's residence and nearby areas, Lewis's change-of-plea hearing in his Connecticut criminal case stemming from the search, DNA analysis, and a phone call Lewis made while incarcerated. The court recounts here only the evidence necessary for the instant Ruling.

The government's first witness, Detective Mark DeCarvalho, testified that he and other law enforcement agents of the New Haven Police Department ("NHPD") executed a search warrant at the second-floor apartment at 200 Winthrop Avenue on the morning of June 1, 2017. 3/3 Tr. at 57:19-58:2. The jury would later hear from Detective Orlando Crespo that there were units on the first-, second-, and third-floors of the building. See id. at 133:14-141:2. Lewis lived on the second-floor, and his aunts occupied the first-and third-floor units. See id. An adult female and her daughter were

also staying at 200 Winthrop Avenue for an unspecified period of time on or around the date of the search.  See id. at 140:22-141:2.

While DeCarvalho testified, the government played a video of the search for the jury.  See id. at 66:8-25.  Law enforcement agents "retrieved quite a few pieces of evidence" during the search of the second-floor unit.  Id. at 69:16-17.  These included a men's jacket found in the bedroom, which contained in one of its a pockets a plastic sandwich bag filled with smaller plastic Ziploc bags of marijuana; another plastic sandwich bag found in the bedroom filled with smaller plastic Ziploc bags of marijuana; plastic Ziploc bags bearing a red apple logo, including one such bag that contained smaller Ziploc bags with what appeared to be marijuana residue on them; and approximately $1,300 found in locations throughout the bedroom, mostly made up of bills of small denominations.  Id. at 69:25-76:10.

DeCarvalho also testified concerning the back porch and backyard behind 200 Winthrop Avenue.  As DeCarvalho explained, a common stairwell connected the apartment units to the back porch.  See id. at 77:17-21.  Detective Crespo testified that two security cameras mounted on the building were trained on the garage in the backyard, that Lewis's aunt controlled the cameras, and that Crespo was unable to retrieve footage from the cameras.  Id. at 134:11-135:1.  There were multiple cars on the premises, and Lewis consented to searches of a Honda vehicle and a BMW vehicle but disavowed knowledge of a Chevy vehicle.  Id. at 104:6-16.  Crespo also stated that there were "[w]eights, [a] lifting bench, [a] grill," and a space that "looks like where they keep the dogs . . . ."  Id. at 134:6-7.

Detective DeCarvalho testified that law enforcement agents found a "dark-colored laundry basket" on the back porch. Id. at 78:1-2. According to DeCarvalho, "[w]ithin that dark-colored laundry basket was [a] black trash bag. Within that black trash bag was a tan shoe box. Within the tan shoe box, there was more [of] what we believe[d] to be marijuana packaged up inside of [a] clear sandwich bag, within smaller clear Ziploc bags. Also along with the shoe box [but not inside the shoe box] inside the black trash bag was a sock. Within that sock was a firearm." Id. at 78:3-9. Further, DeCarvalho told the jury that the plastic bag found in the shoe box bore "an apple logo on it like the clear, plastic Ziploc bags with the apple logo on it which was located within [a] bedroom" in Lewis's apartment. Id. at 79:5-7.

Detective Thomas Glynn, who was the first law enforcement agent to locate the laundry basket, testified that there was also a scale in the shoe box and that the "butt end of the firearm" was "sticking up" out of the sock. Id. at 112:16-114:8. Detective Omaida Nieves, who collected the gun from where it was found, testified that she handled the gun using latex gloves in order to prevent contamination, that the substance in the plastic bags found in the laundry basket field-tested as marijuana, and that there were several empty "plastic Ziploc baggies" "packaged with an apple logo" also found in the laundry basket. Id. at 154:12-159:19.

The government supplemented its witnesses' testimony about the search with physical evidence recovered from the search, and with photographs depicting such evidence as it was found during the search or as it was organized for ease of viewing. See Gov't's Exs. 6-A, 6-B, 6-C, 7-A, 7-B, 7-C, 8-A, 8-B, 8-C, 8-D, 9, 10, 11, 12-A, 12-B,

13, 15, 16, 18, 22, 23, 24, 25, 26, 27-A, 27-B, 27-C, 27-D, 27-E, 27-F, 27-G, 27-H, 27-I, 27-J, 27-K, 27-L, 28-A, 28-B, 28-C, 28-D, 28-E, 28-F, 28-G, 28-H, and 32.

Forensic examiner Jillian Echard testified for the government concerning DNA evidence retrieved from the gun and from the sock.  Specifically, Echard testified concerning comparisons of DNA samples taken from the gun and the sock, with a known DNA sample taken from Lewis.  See Tr. ("3/4 Tr.") (Doc. No. 153) at 291:17-292:18.  With respect to DNA samples taken from the firearm's grip and handle, Echard included in her testimony that she determined that the DNA sample was "a mixture of four contributors with at least one of those contributors being a male contributor."  Id. at 292:21-25.  Echard testified further that she used a software program to determine that 86% of the DNA sample taken from the firearm grip and handle came from that male contributor, and that it was "at least one in 100 billion times more likely" that Lewis was that individual, as opposed to an unknown person.  Id. at 294:16-295:10.

Additionally, Echard stated that Lewis was identified as a contributor to the DNA sample taken from the exterior of the sock in which the gun was found, and that it was at least 100 billion times more likely that Lewis and three unknown individuals contributed to this DNA sample, as opposed to four unknown individuals having contributed to the sample.  Id. at 299:23-300:19.

In contrast, Echard's analysis of a DNA sample taken from the trigger of the firearm was less conclusive, but it did indicate that it was at least 410 million times more likely that Lewis and two unknown individuals contributed to the sample, as opposed to three unknown individuals having contributed to the sample.  Id. at 300:20-301:18.

In response to questioning concerning whether the DNA taken from the firearm could have been transferred onto the firearm from the sock, Echard stated that she "can never speak with certainty [about whether] cells were transferred from one object to another object[,]" but that, "given my experience and knowing that the amount of cells do tend to decrease as they go from one object to another object and looking at the DNA quantities from this sock and from the firearm, I don't think it is likely that the cells on the firearm got there solely from transfer." Id. at 304:7-15.

With respect to Lewis's Connecticut criminal case stemming from the same search of 200 Winthrop Avenue conducted on June 1, 2017, the jury received a redacted portion of the transcript of Lewis's change-of-plea hearing, held on March 5, 2018. Id. at 200:13-201:9; Gov't's Ex. 2. The transcript reflects that Lewis pled guilty to possessing 102 grams of marijuana found in his residence, and that Lewis admitted to possessing that marijuana with the intent to sell it. Gov't's Ex. 2.

As to the phone call made by Lewis while incarcerated, the jury heard Lewis say to an unidentified male on October 5, 2018, in relevant part, that "I'm not sure where they found that gun at or, or where was that gun, or how did they get it. But, I know for a fact I have some marijuana back there in a bag, ya feel me?" Gov't's Exs. 35, 35T, 37.

At the close of the government's case during the first trial phase, the court reserved decision on Lewis's Motion for Acquittal with respect to the furtherance element of Count One while otherwise denying Lewis's Motion. 3/4 Tr. at 337:22-339:6.

The jury returned a verdict of guilty as to Count One, rendering the special interrogatory regarding knowing possession unnecessary. See 924(c) Verdict.

During the second trial phase, the government introduced a stipulation, signed by Lewis, which states that Lewis "was a convicted felon and knew that he was a convicted felon prior to June 1, 2017[.]"  Tr. ("3/5 Tr.") (Doc. No. 154) at 454:10-12.  The jury subsequently returned a verdict of guilty as to Count Two.  See Felon-in-Possession Verdict.

On March 17, 2020, Lewis filed a Motion for Judgment of Acquittal or a New Trial Def.'s Mot.  Lewis filed a Memorandum in support of this Motion on April 24, 2020.  Mem. of Law in Support of Def.'s Mot. for J. of Acquittal or New Trial ("Def.'s Mem.") (Doc. No. 155).  The government filed its Response in opposition on May 15, 2020.  Gov't's Resp. to Def.'s R. 29 and R. 33 Mot. ("Gov't's Resp.") (Doc. No. 156).  Lewis replied on June 5, 2020.  Def.'s Reply Brief in Support of Mot. for J. of Acquittal or New Trial ("Def.'s Reply").

### III. STANDARD

Rule 29 of the Federal Rules of Criminal Procedure requires the court, on a defendant's motion, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  A defendant who challenges the sufficiency of the evidence supporting "a jury's guilty verdict bears a heavy burden."  United States v. Pauling, 924 F.3d 649, 656 (2d Cir. 2019) (citation and internal quotation marks omitted).  This is because the court in deciding a motion for a judgment of acquittal must view the evidence in the light most favorable to the government, draw all permissible inferences in favor of the government, and defer to the jury's assessments of witness credibility and the weight of evidence.  Id.  In contrast to impermissible speculation, which occurs when there is "a complete absence of probative facts to support the conclusion reached[,]" a permissible inference "is not a

7

suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." See id. (citations and internal quotation marks omitted). "These principles apply whether the evidence being reviewed is direct or circumstantial." United States v. Chavez, 549 F.3d 119, 125 (2d Cir. 2008).

The question for the court is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Mi Sun Cho, 713 F.3d at 720 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The court must view the evidence "in its totality, as each fact may gain color from others." United States v. Cassese, 428 F.3d 92, 98–99 (2d Cir. 2005) (citations and internal quotation marks omitted). Additionally, the court must be careful not to substitute its determination of the weight of the evidence, or the inferences to be drawn, or the credibility of the witnesses, for that of the jury. Id. at 98.

Rule 33 of the Federal Rules of Criminal Procedure allows the court, on a defendant's motion, to vacate any judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Motions for new trials should be granted sparingly, and only if "the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." United States v. Triumph Capital Grp., Inc., 544 F.3d 149, 159 (2d Cir. 2008) (citation omitted). In resolving a motion for a new trial under Rule 33, the court is permitted to reevaluate the evidence, but "generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility." United States v. Ferguson, 246 F.3d 129, 133–34 (2d Cir. 2001) (citation omitted).

**IV.   DISCUSSION**

    **A.**    <u>Rule 29</u>

        1.    Possession

As the court explained in its instructions to the jury, "'Possession' means that the defendant either had physical possession of the firearm on his person" (actual possession) or "that he had dominion and control over the place where the firearm was located and had the power and intention to exercise control over the firearm" (constructive possession). Jury Charge ("Count One Jury Charge") (Doc. No. 139) at 39; see Chavez, 549 F.3d at 129.

Viewing the evidence in the light most favorable to the government, and drawing all permissible inferences in the government's favor, the court concludes that the evidence was sufficient for the jury to find beyond a reasonable doubt that, on or about June 1, 2017, Lewis constructively possessed the firearm recovered from the laundry basket.

Lewis argues that individuals other than Lewis had access to the backyard, and that the government failed to present evidence upon which the jury could permissibly infer Lewis's intention to access the firearm on June 1, 2017. See Def.'s Mem. at 18-20. With respect to whether the evidence showed that individuals other than Lewis had sufficient access to the firearm such that inferring dominion and control might be impermissible, the jury was presented with evidence showing that the firearm was hidden within a laundry basket, trash bag, and sock; that the backyard area was protected by surveillance cameras operated by Lewis's family member; that Lewis's DNA matched samples drawn from both the sock and the firearm; and that the apple logo on plastic bags found in the laundry basket was identical to the apple logo on

9

similar bags found inside Lewis's apartment. See infra at 2-5. Considered together and in the light most favorable to the government, this evidence was sufficient to support a permissible inference of dominion and control. See United States v. Albarran, 943 F.3d 106, 118-19 (2d Cir. 2019) (explaining that, even "[w]here more than one person occupies the premises," a finding of constructive possession is warranted if the evidence supports an inference that the defendant had knowledge of and access the item in question).

With respect to the specific date of the execution of the search warrant (June 1, 2017), the jury was presented with evidence showing that Lewis pled guilty to a state drug trafficking offense tied to that very same date. See Gov't's Ex. 2. While it is possible that this evidence is insufficient to support an inference that Lewis actually possessed the firearm on or about June 1, 2017, the court concludes that the Connecticut change-of-plea transcript, considered together with the rest of the evidence, provides ample support for an inference that Lewis constructively possessed the firearm on or about June 1, 2017. Thus, the arguments Lewis raises in support of his Motion are unavailing.

The court is satisfied that, in light of the evidence discussed above, as well as the recording of the phone call in which Lewis discusses the laundry basket, the evidence was sufficient for the jury to conclude that Lewis had dominion and control over the firearm, and the power and intention to access the firearm, on June 1, 2017. Based on the phone call, the concealed location of the firearm, and the DNA evidence, the jury could reasonably and permissibly infer that Lewis had dominion and control over the contents of the laundry basket. Based on the matching logos and Lewis's guilty plea in

the Connecticut criminal case, the jury could reasonably and permissibly infer that Lewis had the power and intention to access the firearm on or about June 1, 2017.

      2.    Furtherance

Because a "gun may . . . be possessed for any number of purposes, some unlawful, others unlawful[,]" the government can only secure a conviction under section 924(c) of title 18 of the U.S. Code by "establish[ing] the existence of a specific 'nexus' between the charged firearm" and drug trafficking. Chavez, 549 F.3d at 130 (citing United States v. Snow, 462 F.3d 55, 62 (2d Cir. 2006), United States v. Lewter, 402 F.3d 319, 321-22 (2d Cir. 2005), and United States v. Finley, 245 F.3d 199, 203 (2d Cir. 2001)). A specific nexus exists if "the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." Id. (citations and internal quotation marks omitted).

The Second Circuit has observed that "[t]he 'nexus' inquiry is fact-intensive." Id. (citing Snow, 462 F.3d at 62). Depending on the particular facts of a given case, factors relevant to a court's nexus determination may include "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found[.]" Id. (emphasis added) (quoting Snow, 462 F.3d at 62 n.8). Thus, the Second Circuit emphasized in its opinion rejecting a sufficiency challenge in United States v. Snow, that "[o]fficers found the two loaded handguns in a bedroom dresser," with "one in the top drawer next to $6,000 in cash[,]" and both "in close physical

11

proximity to the paraphernalia used in the packaging and sale of . . . illegal narcotics found in the kitchen." 462 F.3d at 63.

Viewing the evidence in the light most favorable to the government, and drawing all permissible inferences in the government's favor, the court concludes that the evidence was sufficient for the jury to find beyond a reasonable doubt that Lewis possessed the firearm in furtherance of drug trafficking.

Lewis argues that the evidence was insufficient with respect to whether Lewis possessed the firearm in furtherance of drug trafficking offense because the evidence, according to Lewis, showed only that Lewis "stor[ed] a loaded firearm <u>outside</u> of his residence, tucked inside of a sock, buried in the bottom of a trash bag at the bottom of a laundry basket." Def.'s Mem. at 24. According to Lewis, the jury could infer from this evidence only "the mere presence" of the firearm" near where a drug trafficking crime occur[ed.]" See id.

These arguments are unavailing. In particular, Lewis overlooks the close proximity between the firearm and drug trafficking paraphernalia, including a scale and plastic bags bearing an apple logo identical to the logo appearing on bags found inside Lewis's residence. In other words, although the firearm was found outside of Lewis's apartment, it was "tucked in[ ]" the laundry basket and trash bag together with evidence of drug trafficking.[1] The location of the laundry basket on the back porch notwithstanding, these circumstances are similar to those deemed by the Second

---

[1] Lewis emphasizes Detective Glynn's testimony that the firearm was "separate" from the other contents of the laundry basket. Def.'s Mem. at 24. Read in context, it is clear that Detective Glynn was merely stating that the firearm was not found inside the shoebox. See 3/3 Tr. at 113:1-12. Both the gun and the shoebox were found inside the trash bag, which, in turn, was inside the laundry basket. Id.

12

Circuit to be sufficient in Snow.  See 462 F.3d at 63 (emphasizing that firearms were found "in close proximity to the paraphernalia used in the packaging and sale of . . . illegal narcotics").

Further, the concealed location of the firearm does not necessarily weigh against the government's case.  In Chavez, the Second Circuit determined that the "clandestine [ ]" nature of the defendant's firearm, which included "a silencer that bore no manufacturer's name or serial number," was an "indici[um]" of possession for an unlawful purpose.  549 F.3d at 131.  Here, the jury could have permissibly viewed the hidden location of the firearm as an indicium of possession for an unlawful purpose. The firearm's proximity to drug trafficking paraphernalia, the similarities of those items to drug trafficking paraphernalia found in Lewis's apartment, and Lewis's guilty plea to a Connecticut drug trafficking offense stemming from the same search of Lewis's residence, together provided sufficient grounds for the jury to infer permissibly that the unlawful purpose in question was a drug trafficking offense.

The court also notes the apparent absence of any items of importance in the laundry basket unrelated to drug trafficking or the firearm.  Had such items, such as personal valuables or documents, been present in the laundry basket, Lewis's argument that the evidence was in equipoise might be stronger, on the theory that the laundry basket essentially functioned as a safe for all items--whether or not related to drug trafficking--that Lewis sought to conceal.  In the absence of any such items, however, the court is satisfied that the jury could reasonably and permissibly infer that the laundry basket was where Lewis kept items that he used in furtherance of drug trafficking offenses.

B.     Rule 33

Lewis's arguments in support of his request for a new trial essentially repeat arguments made in his request for a judgment of acquittal.  Lewis contends "that the evidence was nearly equally balanced" with respect to possession and with respect to the "in furtherance" element of Count One.  Def.'s Mem. at 27.  Lewis also asserts that "the jury engaged in speculation and disregarded the Court's instruction that '[t]he mere possession of a firearm, without a purposeful relationship to drug distribution, is not sufficient.'"  Id. (citing Count One Jury Charge at 40).

For substantially the same reasons the court identified above in connection with Lewis's request for relief pursuant to Rule 29, the Court also concludes that the interest of justice does not require a new trial in this case.  See Fed. R. Crim. P. 33(a).  The evidence was not in equipoise or nearly in equipoise: rather, the witnesses and exhibits presented by the government provided the jury with ample grounds to find Lewis guilty of both counts beyond a reasonable doubt.  Contrary to Lewis's assertion that the jury engaged in speculation, the record includes specific facts--including the bags with matching red apple logos found in the apartment and in the laundry basket, as well as the scale found in the laundry basket--upon which the jury could permissibly infer a purposeful relationship to drug trafficking.[2]  See Pauling, 924 F.3d at 656 (explaining that a permissible inference is "a reasoned, logical decision to conclude that a disputed

---

[2] Lewis appears to suggest that he should have objected to the inclusion in the Jury Charge of a non-exclusive list of possible factors to consider in connection with the "in furtherance" element of Count One, and he surmises that the list might have encouraged the jury to speculate impermissibly.  See Def.'s Mem. at 23-24.  The court notes that it included in the Jury Charge an express warning that the jury "must not consider [possible factors] a checklist or apply them rigidly."  Count One Jury Charge at 40.  The court also notes that the Second Circuit quoted a virtually identical list of possible factors with approval in Chavez.  See 549 F.3d at 130 (quoting Snow, 462 F.3d at 62 n.6).

14

fact exists on the basis of another fact that is known to exist" (citation and internal quotation marks omitted)).

The court possesses some discretion to reevaluate the evidence for the purposes of a request for a new trial under Rule 33. In this case, however, the court is not "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." See <u>Triumph Capital Grp., Inc.</u>, 544 F.3d at 159 (citation omitted).

## V. CONCLUSION

For the reasons stated above, Lewis's Motion for Judgment of Acquittal or a New Trial (Doc. No. 146) is denied.

**SO ORDERED.**

Dated this 25th day of August 2020 at New Haven, Connecticut.

        /s/ Janet C. Hall
        Janet C. Hall
        United States District Judge